**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

Bank Midwest, a Division of NBH Bank,

      Plaintiff,

v.

NC Enterprises LLC, LTI Trucking Services
Inc., LTI Logistics Services LLC d/b/a LTI
Logistics LLC, and Nicholas
Civello,

      Defendants.

Case No. 4:25-cv-00325-MAL

**FIRST AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff Bank Midwest, a division of NBH Bank ("Bank Midwest") as and for its First

Amended Complaint against Defendants NC Enterprises LLC, LTI Trucking Services Inc., LTI

Logistics Services LLC d/b/a LTI Logistics LLC, and Nicholas Civello (collectively, the

"Defendants"), states and alleges as follows[1]:

## PARTIES, JURISDICTION, AND VENUE

1.      Bank Midwest is a Colorado state-chartered banking association with its principal

place of business in Denver, Colorado.

2.      NC Enterprises LLC ("NC Enterprises" or "Borrower") is a Missouri domestic

limited liability company with its principal place of business located at 411 N. 10th Street, Suite

500, St. Louis, Missouri 63101.  The members of NC Enterprises are: (a) the Civello Qualified

Spousal Trust u/t/a dated July 1, 2016, a trust governed by Missouri law, which imposes

fiduciary duties on the trustee and authorizes the trustee to sue and be sued on behalf of the

---

[1] Defendants consented in writing to the amendment herein, so Plaintiff is filing this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

CORE/3000603.0175/232290301.1

trustee, and which has its principal office address at 2137 Hickory Drive, Chesterfield, Missouri 63005) (80% interest); and (b) Phillip A. Hamel (20% Class B interest).

3.      The trustees of the Civello Qualified Spousal Trust u/t/a dated July 1, 2016, are Nicholas Civello and Julie Ann Civello, who reside permanently at 2137 Hickory Drive, Chesterfield, Missouri 63005, and are taxpayers and citizens of the State of Missouri.

4.      Phillip A. Hamel resides permanently at 17516 Gillican Overlook Rd., Davidson, North Carolina 28036, and is a taxpayer and citizen of the State of North Carolina.

5.      LTI Trucking Services Inc. ("LTI Trucking") is a Missouri domestic corporation with its principal place of business located at 411 N. 10th Street, Suite 500, St. Louis, Missouri 63101.

6.      LTI Logistics Services LLC d/b/a LTI Logistics LLC ("LTI Logistics") is a Missouri domestic limited liability company with its principal place of business located at 411 N. 10th Street, Suite 500, St. Louis, Missouri 63101.  The sole member of LTI Logistics is the Civello Qualified Spousal Trust u/t/a dated July 1, 2016 (a Missouri trust with its principal office address at 2137 Hickory Drive, Chesterfield, Missouri 63005), and the co-trustees are Nicholas Civello and Julie Ann Civello (Missouri citizens domiciled at 2137 Hickory Drive, Chesterfield, Missouri 63005).

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, and the parties are citizens of different states.

8.      Venue is appropriate in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391 because the Defendants either reside in or maintain a principal place of business in this district.

2

## FACTS COMMON TO ALL COUNTS

9.      Bank Midwest is engaged, among other things, in the business of financing the acquisition of equipment and other personal property to businesses in various industries. Defendant NC Enterprises is a customer of Bank Midwest who entered into various loans to enable it to finance equipment consisting primarily of semi-trailers through Bank Midwest. Defendants LTI Trucking, LTI Logistics and Civello guaranteed those loans.

## MASTER LOAN AND SECURITY AGREEMENT

10.      On or about March 24, 2022, NC Enterprises entered into a loan agreement with Bank Midwest as evidenced by that certain Master Loan and Security Agreement dated as of March 24, 2022, by and between NC Enterprises and Bank Midwest, as amended, modified, renewed or restated from time to time (the "Master Loan Agreement").  A true and correct copy of the Loan Agreement is attached as **Exhibit 1** and is incorporated by reference.

11.      Pursuant to the Master Loan Agreement, NC Enterprises promised to pay Bank Midwest the amounts set forth on each promissory note pursuant to the terms as provided herein.

12.      Paragraph 8 of the Master Loan Agreement provides, among other things, that NC Enterprises shall be in default if it:

A.      Fails to make note payments when due;

B.      Fails to pay any other indebtedness to Bank Midwest when due;

C.      Breaches any warranty, representation, covenant, agreement, or other provision contained in the Loan Agreement;

D.      Becomes insolvent or ceases to do business as a going concern; or

E.      Provides false or misleading information to Bank Midwest regarding its financial condition.

CORE/3000603.0175/232290301.1

13.     Pursuant to Paragraph 9 of the Master Loan Agreement, upon the occurrence of an event of default, Bank Midwest shall have the following rights and remedies, which include but are not limited to:

A.      Accelerating the maturity date of any note and declare all payments immediately due and payable, together with accrued interest or other amounts due and owing thereunder;

B.      Causing Borrower to discontinue the use of any or all collateral or disable the collateral;

C.      Enforcing all the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to any deficiency remaining after disposition of the collateral for which Borrower hereby agrees to remain fully liable;

D.      Disassembling, rendering unusable and/or repossessing (by self-help or otherwise) all or any item of constituting collateral, disconnecting and separating all collateral from any other property and using all force necessary;

E.      Requiring Borrower to assemble the collateral and return it to Bank Midwest at a place to be designated by Bank Midwest that is reasonably convenient to both parties;

F.      Selling or leasing the collateral provided that Bank Midwest acts in good faith and in a commercially reasonable manner; and

G.      Applying for the appointment of a receiver over Borrower.

14.     Pursuant to paragraph 18 of the Master Loan Agreement, the Borrower and the Guarantors agreed that the Master Loan Agreement amends, restates, combines, consolidates and supersedes prior loan documents, including Note 4, the Change in Terms Agreement, and the 2018 Security Agreement (each defined below).

## NOTE 4

15.     On or about July 25, 2018, NC Enterprises entered into a promissory note with Bank Midwest as evidenced by that certain Promissory Note, identified as Loan No. 190093004916-4 ("Note 4") executed and delivered by NC Enterprises in the original principal

4

CORE/3000603.0175/232290301.1

amount of $1,478,694.00.  A true and correct copy of Note 4 is attached as **Exhibit 2** and is incorporated by reference.

16.    In connection with Note 4, NC Enterprises entered into a commercial security agreement with Bank Midwest as evidenced by that certain Commercial Security Agreement dated as of July 25, 2018, by and between NC Enterprises and Bank Midwest, as amended, modified, renewed or restated from time to time (the "2018 Security Agreement").  A true and correct copy of the 2018 Security Agreement is attached as **Exhibit 3** and is incorporated by reference.

17.    Various items of equipment comprise the collateral financed under the 2018 Security Agreement and Note 4, including twenty-two (22) 2018 utility trailers (the "2018 Collateral") described more specifically therein. A true and accurate copy of Exhibit A to the 2018 Security Agreement is attached as **Exhibit 4** and is incorporated by reference.

18.    Pursuant to the 2018 Security Agreement and Note 4, NC Enterprises agreed to make seventy-two (72) monthly payments in the amount of $23,968.49 commencing on September 4, 2018, with the final payment on August 4, 2024, consisting of all remaining unpaid principal and accrued interest, and all other amounts due in accordance with Note 4 as amended by the Change in Terms Agreement and the 2018 Security Agreement.

19.    On April 6, 2020, NC Enterprises entered into a change in terms agreement with Bank Midwest as evidenced by that certain Change in Terms dated as of April 6, 2020, by and between NC Enterprises and Bank Midwest ("Change in Terms Agreement One").  Pursuant to Change in Terms Agreement One, principal payments were deferred for the months of May, June and July of 2020, and the maturity date was extended by ninety (90) days, requiring three additional principal and interest payments.  Change in Terms Agreement One required interest

5

CORE/3000603.0175/232290301.1

only payments for the months of May, June and July of 2020, resuming principal and interest payments of $23,937.13 on August 4, 2020 and extending the maturity date through November 4, 2024.  A true and accurate copy of Change in Terms Agreement One is attached as **Exhibit 5** and is incorporated by reference.

20.     The Master Loan Agreement, Note 4, the 2018 Security Agreement, and Change in Terms Agreement One are, collectively, the "Note 4 Agreements."

21.     Pursuant to the Note 4 Agreements, NC Enterprises granted to Bank Midwest a continuing security interest in the 2018 Collateral.

22.     Bank Midwest perfected its security interest in the 2018 Collateral by causing itself to be scheduled as lienholder on the certificates of title for each trailer comprising the 2018 Collateral.  True and correct copies of the titles comprising the 2018 Collateral are attached as **Exhibit 6**.

23.     NC Enterprises is in default with respect to Note 4 by failing to make all monthly payments due since September 4, 2024, entitling Bank Midwest to exercise its contractual and legal remedies.  Such remedies include, without limitation, accelerating the maturity date of Note 4, declaring all payments thereunder immediately due and payable, and recovering the total amounts due pursuant to the terms of the Note 4 Agreements, as of March 6, 2025, of not less than $66,282.08, plus interest accruing thereafter at a daily rate of $29.30 through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## NOTE 5

24.     On or about July 9, 2019, NC Enterprises entered into a loan agreement with Bank Midwest as evidenced by that certain Master Loan and Security Agreement dated as of July 9, 2019, by and between NC Enterprises and Bank Midwest, as amended, modified,

CORE/3000603.0175/232290301.1

renewed or restated from time to time (the "2019 Master Loan Agreement[2]").  A true and correct copy of the 2019 Master Loan Agreement is attached as **Exhibit 7** and is incorporated by reference.

25.     On or about July 9, 2019, and in connection with the 2019 Loan Agreement, NC Enterprises entered into a promissory note with Bank Midwest as evidenced by that certain Promissory Note, identified as Equipment Finance Note No. 1909304916-5 ("Note 5") executed and delivered by NC Enterprises in the original principal amount of $1,045,375.00.  A true and correct copy of Note 5 is attached as **Exhibit 8** and is incorporated by reference.

26.     Various items of equipment comprise the collateral financed under Note 5, including fifteen (15) Utility Trailers (the 2019 Collateral") as described more specifically therein.  A true and correct copy of Exhibit A to Note 5 is attached as **Exhibit 9** and is incorporated by reference.

27.     Pursuant to Note 5, NC Enterprises agreed to make seventy-two (72) monthly payments in the amount of $16,468.32 commencing on August 9, 2019, with the final payment due on July 9, 2025, consisting of all remaining unpaid principal and accrued interest, and all other amounts due in accordance with Note 5 and the 2019 Loan Agreement.

28.     On April 9, 2020, NC Enterprises entered into a change in terms agreement with Bank Midwest as evidenced by that certain Change in Terms dated as of April 9, 2020, by and between NC Enterprises and Bank Midwest ("Change in Terms Agreement Two").  Pursuant to the Change in Terms Agreement Two, principal payments were deferred for the months of May, June and July of 2020, and the maturity date was extended by ninety (90) days, requiring three

---

[2] The 2019 Master Loan Agreement contains essentially the same terms and conditions as the Master Loan Agreement (paragraphs 9 through 13 above).  To the extent that the Master Loan Agreement did not amend, restate, combine, consolidate or supersede the 2019 Master Loan Agreement, it is cited herein for the same provisions contained in paragraphs 9 through 13 above.

CORE/3000603.0175/232290301.1

additional principal and interest payments.  Change in Terms Agreement Two required interest only payments for the months of May, June and July of 2020, resuming principal and interest payments of $16,462,45 on August 9, 2020 and extending the maturity date through October 9, 2025.  A true and accurate copy of Change in Terms Agreement Two attached as **Exhibit 10** and is incorporated by reference.

29.     The 2019 Master Loan Agreement, Note 5, the Change in Terms Agreement Two are, collectively, the "Note 5 Agreements."

30.     Pursuant to the Note 5 Agreements, NC Enterprises granted to Bank Midwest a continuing security interest in the 2019 Collateral.

31.     Bank Midwest perfected its security interest in the 2019 Collateral by causing itself to be scheduled as lienholder on the certificates of title for each trailer comprising the 2019 Collateral.  True and correct copies of the titles comprising the 2018 Collateral are attached as **Exhibit 11**.

32.     NC Enterprises is in default with respect to Note 5 by failing to make all monthly payments due since October 9, 2024, entitling Bank Midwest to exercise its contractual and legal remedies. Such remedies include, without limitation, accelerating the maturity date of Note 5, declaring all payments thereunder immediately due and payable, and recovering the total amounts due pursuant to the terms of Note 5 Agreements, as of March 6, 2025, of not less than $228,412.95, plus interest accruing thereafter at a daily rate of $103.01 through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## NOTE 6

33.     On or about March 24, 2022, and in connection with the Master Loan Agreement, NC Enterprises also entered into a promissory note with Bank Midwest as evidenced by that

8

certain Promissory Note, identified as Equipment Finance Note No. 1909304916-6 ("Note 6") executed and delivered by NC Enterprises in the original principal amount of $840,000.00.  A true and correct copy of Note 6 is attached as **Exhibit 12** and is incorporated by reference.

34.    Various items of equipment comprise the collateral financed under Note 6, including: twenty-eight (28) 2014 Utility Trailers; thirty (30) 2018 Utility trailers; and fifteen (15) 2020 Utility Trailers (the "2022 Collateral") as described more specifically therein.  A true and correct copy of Exhibit A to Note 6 is attached as **Exhibit 13** and is incorporated by reference.

35.    Pursuant to Note 6, NC Enterprises agreed to make thirty-two (32) monthly payments in the amount of $24,872.30 commencing on April 24, 2022, with the final payment due on March 23, 2025, consisting of all remaining unpaid principal and accrued interest, and all other amounts due in accordance with Note 6 and the Master Loan Agreement.

36.    Note 6 and the Master Loan Agreement are, collectively, the "Note 6 Agreements."

37.    Pursuant to the Note 6 Agreements, NC Enterprises granted to Bank Midwest a continuing security interest in the 2022 Collateral.

38.    Bank Midwest perfected its security interest in the 2022 Collateral by causing itself to be scheduled as lienholder on the certificates of title for each trailer comprising the 2022 Collateral.  A true and correct copy of the titles are attached as **Exhibit 14**.  See also **Exhibit 6** and **Exhibit 11**.

39.    NC Enterprises is in default with respect to Note 6 by failing to make all monthly payments due since August 23, 2024, entitling Bank Midwest to exercise its contractual and legal remedies. Such remedies include, without limitation, accelerating the maturity date of Note 6,

9

declaring all payments thereunder immediately due and payable, and recovering the total amounts due pursuant to the terms of Note 6 Agreements, as of March 6, 2025, of not less than $191,634.14, plus interest accruing thereafter at a daily rate of $84.43 through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

40.    The Note 4 Agreements, the Note 5 Agreements, and the Note 6 Agreements are collectively, the "Loan Documents".

41.    The 2018 Collateral, the 2019 Collateral, and the 2022 Collateral are, collectively, the "Collateral."

42.    The total amounts due pursuant to the terms of the Loan Documents, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## THE LTI TRUCKING GUARANTY

43.    To induce Bank Midwest to enter into the Loan Documents with NC Enterprises, Defendant LTI Trucking executed a Commercial Guaranty Agreement dated June 8, 2018 (the "LTI Trucking Guaranty"), pursuant to which LTI Trucking unconditionally and absolutely guaranteed the full and prompt payment and performance when due of all payments and obligations of every type owed by NC Enterprises to Bank Midwest.  A true and correct copy of the LTI Trucking Guaranty is attached as **Exhibit 15** and is incorporated by reference.

44.    The LTI Trucking Guaranty also requires the payment of all costs and expenses (including costs and attorneys' fees) incurred by Bank Midwest in connection with all obligations due in connection with the Loan Documents.

10

CORE/3000603.0175/232290301.1

45.     NC Enterprises breached its obligations by failing to make requisite timely payments pursuant to the Loan Documents.

46.     Pursuant to the Loan Documents, failure to timely pay the monthly installment payments due under the Notes constitutes an event of default under the Loan Documents.

47.     The LTI Trucking Guaranty provides that the Defendant LTI Trucking shall "jointly and severally, unconditionally and absolutely hereby guarantee the due and punctual payments to [Bank Midwest] when and as the same shall become due and payable."

48.     Defendant LTI Trucking failed to adhere to its payment obligations pursuant to the LTI Trucking Guaranty, and is in default.  Accordingly, and pursuant to the terms and conditions set forth in the Loan Documents and the LTI Trucking Guaranty, Bank Midwest is entitled to exercise its remedies in accordance with the terms of the Loan Documents and the LTI Trucking Guaranty.  Such remedies include, without limitation, accelerating the maturity date of the Notes, declaring all payments thereunder immediately due and payable, and recovering the total amounts due pursuant to the terms of the LTI Trucking Guaranty and the Loan Documents, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## THE LTI LOGISTICS GUARANTY

49.     To induce Bank Midwest to enter into the Loan Documents with NC Enterprises, Defendant LTI Logistics executed a Commercial Guaranty Agreement dated June 8, 2018 (the "LTI Logistics Guaranty"), pursuant to which LTI Logistics unconditionally and absolutely guaranteed the full and prompt payment and performance when due of all payments and obligations of every type owed by NC Enterprises to Bank Midwest.  A true and correct copy of the LTI Logistics Guaranty is attached as **Exhibit 16** and is incorporated by reference.

11

CORE/3000603.0175/232290301.1

50.     The LTI Logistics Guaranty also requires the payment of all costs and expenses (including costs and attorneys' fees) incurred by Bank Midwest in connection with all obligations due in connection with the Loan Documents.

51.     NC Enterprises breached its obligations by failing to make requisite timely payments pursuant to the Loan Documents.

52.     Pursuant to the Loan Documents, failure to timely pay the monthly installment payments due under the Notes constitutes an event of default under the Loan Documents.

53.     The LTI Logistics Guaranty provides that the Defendant LTI Logistics shall "jointly and severally, unconditionally and absolutely hereby guarantee the due and punctual payments to [Bank Midwest] when and as the same shall become due and payable."

54.     Defendant LTI Logistics failed to adhere to its payment obligations pursuant to the LTI Logistics Guaranty, and is in default.  Accordingly, and pursuant to the terms and conditions set forth in the Loan Documents and the LTI Logistics Guaranty, Bank Midwest is entitled to exercise its remedies in accordance with the terms of the Loan Documents and the LTI Logistics Guaranty.  Such remedies include, without limitation, accelerating the maturity date of the Notes, declaring all payments thereunder immediately due and payable, and recovering the total amounts due pursuant to the terms of the LTI Logistics Guaranty and the Loan Documents, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## THE CIVELLO GUARANTY

55.     To induce Bank Midwest to enter into the Loan Documents with NC Enterprises, Defendant Civello executed a Commercial Guaranty Agreement dated June 8, 2018 (the "Civello Guaranty"), pursuant to which Civello unconditionally and absolutely guaranteed the full and

CORE/3000603.0175/232290301.1

prompt payment and performance when due of all payments and obligations of every type owed by NC Enterprises to Bank Midwest.  A true and correct copy of the Civello Guaranty is attached as **Exhibit 17** and is incorporated by reference.

56.     The Civello Guaranty also requires the payment of all costs and expenses (including costs and attorneys' fees) incurred by Bank Midwest in connection with all obligations due in connection with the Loan Documents.

57.     NC Enterprises breached its obligations by failing to make requisite timely payments pursuant to the Loan Documents.

58.     Pursuant to the Loan Documents, failure to timely pay the monthly installment payments due under the Notes constitutes an event of default under the Loan Documents.

59.     The Civello Guaranty provides that the Defendant Civello shall "jointly and severally, unconditionally and absolutely hereby guarantee the due and punctual payments to [Bank Midwest] when and as the same shall become due and payable."

60.     Defendant Civello failed to adhere to his payment obligations pursuant to the Civello Guaranty, and is in default.  Accordingly, and pursuant to the terms and conditions set forth in the Loan Documents and the Civello Guaranty, Bank Midwest is entitled to exercise its remedies in accordance with the terms of the Loan Documents and the Civello Guaranty.  Such remedies include, without limitation, accelerating the maturity date of the Notes, declaring all payments thereunder immediately due and payable, and recovering the total amounts due pursuant to the terms of the Civello Guaranty and the Loan Documents, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

13

CORE/3000603.0175/232290301.1

## COUNT I
## BREACH OF LOAN AGREEMENTS AGAINST NC ENTERPRISES

61.     Bank Midwest restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

62.     Bank Midwest and NC Enterprises are parties to the Loan Documents, which constitutes an enforceable contract.

63.     Bank Midwest has complied with all of its obligations under the Loan Documents.

64.     NC Enterprises has breached its obligations under the Loan Documents by, among other things, failing to make timely payments to Bank Midwest.

65.     As a direct and proximate result of NC Enterprises ongoing and uncured defaults, Bank Midwest has suffered damages, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## COUNT II
## BREACH OF GUARANTY AGAINST LTI TRUCKING

66.     Bank Midwest restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 65 as though fully set forth herein.

67.     Bank Midwest and LTI Trucking are parties to the LTI Trucking Guaranty, which is an enforceable contract.

68.     In reliance on the LTI Trucking Guaranty, Bank Midwest entered into the loan agreements described above, and extended credit to NC Enterprises.

69.     Bank Midwest has complied with all of its obligations under the Loan Documents and the LTI Trucking Guaranty.

CORE/3000603.0175/232290301.1

70.    LTI Trucking has breached its obligations under the LTI Trucking Guaranty by failing to make payments to Bank Midwest for the debts and obligations of NC Enterprises, which are due and owing.

71.    As a direct and proximate result of NC Enterprises ongoing and uncured defaults, Bank Midwest has suffered damages, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## COUNT III
## BREACH OF GUARANTY AGAINST LTI LOGISTICS

72.    Bank Midwest restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 71 as though fully set forth herein.

73.    Bank Midwest and LTI Logistics are parties to the LTI Logistics Guaranty, which is an enforceable contract.

74.    In reliance on the LTI Logistics Guaranty, Bank Midwest entered into the loan agreements described above, and extended credit to NC Enterprises.

75.    Bank Midwest has complied with all of its obligations under the Loan Documents and the LTI Logistics Guaranty.

76.    LTI Trucking has breached its obligations under the LTI Logistics Guaranty by failing to make payments to Bank Midwest for the debts and obligations of NC Enterprises, which are due and owing.

77.    As a direct and proximate result of NC Enterprises ongoing and uncured defaults, Bank Midwest has suffered damages, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

15

## COUNT IV
## BREACH OF GUARANTY AGAINST CIVELLO

78.     Bank Midwest restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 77 as though fully set forth herein.

79.     Bank Midwest and Civello are parties to the Civello Guaranty, which is an enforceable contract.

80.     In reliance on the Civello Guaranty, Bank Midwest entered into the loan agreements described above, and extended credit to NC Enterprises.

81.     Bank Midwest has complied with all of its obligations under the Loan Documents and the Civello Guaranty.

82.     Civello has breached his obligations under the Civello Guaranty by failing to make payments to Bank Midwest for the debts and obligations of NC Enterprises, which are due and owing.

83.     As a direct and proximate result of NC Enterprises ongoing and uncured defaults, Bank Midwest has suffered damages, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred.

## COUNT V
## REPLEVIN

84.     Bank Midwest restates, realleges, and adopts by reference all allegations contained in Paragraphs 1 through 83 as though fully set forth herein.

85.     Pursuant to Mo. Rev. Stat. § 400-009.609 and the terms of the Loan Documents, Bank Midwest is entitled to immediate and permanent possession of the Collateral.

86.     The Defendants are wrongfully detaining the Collateral.

CORE/3000603.0175/232290301.1

87.     Because the Defendants are wrongfully detaining the Collateral, Bank Midwest is in danger of losing its interest in the Collateral, the value of the Collateral is rapidly depreciating, and deprived of the opportunity to satisfy Defendants' indebtedness if it cannot obtain immediate possession of the Collateral.

88.     Pursuant to Mo. Rev. Stat. § 533.010, Plaintiff has a right to Replevin the Collateral.

**COUNT VI**
**ALTERNATIVE COUNT – UNJUST ENRICHMENT**

89.     Bank Midwest restates, realleges, and adopts by reference all allegations contained in paragraphs 1 through 88 as though fully set forth herein.

90.     Bank Midwest made loan to NC Enterprises to finance the acquisition of equipment that serves as collateral for the obligations described in the Loan Documents, and the Guarantors personally guaranteed those obligations and received the benefits of the loan proceeds.

91.     Bank Midwest has made demand for payment, but Defendants have failed and refused to make payment.

92.     As a result, Defendants have been unjustly enriched in the amount, as of March 6, 2025, of not less than $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred, and it would be unjust for Defendants to retain the benefits received from Bank Midwest without payment.

**PRAYER FOR RELIEF**

WHEREFORE, Bank Midwest prays that the Court:

CORE/3000603.0175/232290301.1

A.      Enter a money judgment against NC Enterprises and in favor of Bank Midwest for damages for NC Enterprises' breach of the Loan Documents, in an amount to be proven at trial, but not less than, as of March 6, 2025, $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred;

B.      Enter a money judgment against LTI Trucking and in favor of Bank Midwest for damages for LTI Trucking's breach of the LTI Guaranty, in an amount to be proven at trial, but not less than, as of March 6, 2025, $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred;

C.      Enter a money judgment against LTI Logistics and in favor of Bank Midwest for damages for LTI Logistics' breach of the LTI Logistics Guaranty, in an amount to be proven at trial, but not less than, as of March 6, 2025, $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred;

D.      Enter a money judgment against Civello and in favor of Bank Midwest for damages for Civello's breach of the Civello Guaranty, in an amount to be proven at trial, but not less than, as of March 6, 2025, $486,329.17, plus interest accruing thereafter through the date of judgment, plus late fees accruing thereafter, plus costs, expenses and reasonable attorneys' fees incurred;

E.      Enter judgment against Defendants for immediate and permanent possession of the Collateral identified herein;

CORE/3000603.0175/232290301.1

F.     Enter an Order of Delivery in Replevin directing the Sheriff of St. Louis County, Missouri, or any law enforcement in Missouri in which the Collateral may be found, to take delivery of the Collateral from defendants and deliver it to Bank Midwest, for damages for the wrongful detention of the Collateral;

G.     For Bank Midwest's attorney's fees and other costs and expenses of this action; and award Bank Midwest such other and further relief as the Court deems just and equitable.

Dated:  October 7, 2025

**STINSON LLP**

/s/ Austin Diehl
Andrew Scavotto (Mo. Bar No. 57826)
Austin Diehl (Mo. Bar No. 75528)
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105-1821
Phone: 314-719-3048
austin.diehl@stinson.com
andrew.scavotto@stinson.com

*Attorneys for Plaintiff Bank Midwest, a division of NBH Bank*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of October, 2025, a true and accurate copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ Austin Diehl*
*Attorneys for Plaintiff Bank Midwest, a division of NBH Bank*

CORE/3000603.0175/232290301.1